| | | |
|---|---|---|
| SCOTT A. NIEMEYER AND FREEBOOTER PRODUCTIONS, LLC | * | NO. 2024-C-0134 |
| | * | |
| | | COURT OF APPEAL |
| VERSUS | * | |
| | | FOURTH CIRCUIT |
| THE BOARD OF DIRECTORS OF THE PARAGON LOFTS CONDOMINIUM ASSOCIATION, INC., ET AL. | * | STATE OF LOUISIANA |
| | * * * * * * * | |

APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-04330, DIVISION "F-14"
Honorable Jennifer M Medley
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Rachael D. Johnson, Judge Nakisha Ervin-Knott)


Richard G. Duplantier, Jr.
James A. Morock, Jr.
GALLOWAY JOHNSON TOMPKINS BURR & SMITH
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139

      COUNSEL FOR RELATORS

Anne Derbes Wittmann
William E. Wildman, III
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170

      COUNSEL FOR RESPONDENTS

               **WRIT GRANTED; JUDGMENT REVERSED; REMANDED WITH INSTRUCTIONS**
               **April 2, 2024**

*RML*

*RDJ*

*NEK*

Relators are the Paragon Lofts Condominium Association, Inc. (the "Association"), and all five of the Association's Board of Directors in their individual capacities—Tyler Bridges, Emily Young, Alton Ashy, Dayal Reddy, and Bryan Soulie. Relators seek review of the trial court's February 7, 2024 judgment, denying their "Motion to Reallot the Matter to Division 'L' in Accordance with Local Rule 9.3, Section 4" (the "Motion").[1] For the reasons that

---

[1] Rule 9.3 of the Appendix for Orleans Parish Civil District Court to the Rules for Civil Proceedings in District Courts ("CDC Rule 9.3") provides, in pertinent part, as follow:

ALLOTMENT OF CASES

\*\*\*

4. To achieve continuity of case management, and to avoid the appearance of forum shopping, it is the policy of the court that subsequent but related cases should be transferred to the division to which the original case was allotted, whether or not such earlier case is still pending. It shall be the duty of any attorney in such cases to call to the court's attention the existence of such earlier case. The following are examples of cases which ought to be transferred to the original division:

1. Subsequent cases between the same or related parties arising from the same incident or transaction including subsequently filed claims for contribution, indemnity, attorney fees, or penalties.

\* \* \*

3. Cases asserting the same claim, refiled after dismissal without prejudice either voluntarily or involuntarily.

1

follow, we grant Relators' writ, reverse the trial court's February 7, 2024 judgment, and remand with instructions that this case be transferred to Division "L" for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

This matter involves two separate suits—this suit and an earlier filed suit. Although both suits were filed in Orleans Parish Civil District Court ("CDC"), the suits were randomly allotted to different divisions. This suit—referred to as the "Breach Suit"— was allotted to Division "F"; the other suit— referred to as the "Collection Suit"—was allotted to Division "L". To provide a background for our analysis, we summarize each suit.

*Collection Suit*

The Association filed the Collection Suit in February 2022 against Scott Niemeyer, Freebooter Productions, LLC ("Freebooter"), and Michael McKenzie (collectively "Paragon Lofts Defendants"). Paragon Loft Defendants are all Paragon Lofts property owners. The Collection Suit included allegations that the Board, on the Association's behalf, was responsible for maintenance and repair of the Paragon Lofts property's common elements and that the property owners

---

***

TRANSFER AND CONSOLIDATION

l. To facilitate the fair and expeditious resolution of cases, it is the policy of the court to transfer to the lower numbered suit and consolidate for trial those cases in which such consolidation is appropriate. The transfer and consolidation shall be by order of the judge to whom the case is being transferred, after contradictory hearing with, all parties in each case, or with their written approval. It shall be the duty of any attorney in any case which ought to be consolidated to so move or call to the court's attention the pendency of related cases that should be considered for consolidation.

https://www.lasc.org/rules/dist.ct/CDCAppendices.pdf (last visited March 30, 2024)

2

approved Roofing Solutions to install a new roof and waterproofing on the Paragon Lofts building. The Association alleged that Paragon Loft Defendants owed delinquent condominium assessments. The delinquent assessments were related to the repair of the roofing system on the Paragon Lofts building. In the Collection Suit, the Association alleged that Paragon Loft Defendants were notified by email on numerous occasions of the related special assessments due; but Paragon Loft Defendants had not remitted any payments for those assessments.

In response to the Collection Suit, two of Paragon Loft Defendants—Niemeyer and Freebooter—filed an exception of prematurity. The trial court granted the exception but allowed the Association leave to amend. After the Association amended its petition, the same two defendants filed a motion to enter an order of dismissal and a motion to strike, which was denied. The same two defendants filed a writ. This Court granted their writ, reversed the denial of the motion to dismiss, and dismissed the Association's suit without prejudice, finding the amending petition did not cure the prematurity of the original petition. *Paragon Lofts Condominium Owners Assoc., v. Scott Niemeyer*, 23-0250 (La. App. 4 Cir. 5/31/23) (*unpub.*).

*Breach Suit*

Niemeyer and Freebooter (collectively "Respondents") filed the Breach Suit in May 2022 against Relators. The Breach Suit included allegations that the Board, on the Association's behalf, was responsible for maintenance and repair of the common elements. The Breach Suit also included allegations that Paragon Lofts property had water intrusion issues over the past several years, and all proposals for roofing bids to deal with same were not made available to Niemeyer or other property owners for viewing. Additionally, the Breach Suit included allegations

3

that due to the Board's failure to instruct Roofing Solutions to perform certain actions, Niemeyer lost the use and enjoyment of his deck; that there were misrepresentations in the permit application regarding the material to be used in connection with the roofing repairs; that the construction value of the project exceeded the value reflected in the permit application; and that the Board did not request or receive approval from the Association regarding four change orders totaling $289,311.

Respondents further alleged in the Breach Suit that Niemeyer questioned the Board regarding the suspected misrepresentations on the permit application, but the individual Board members never advised of a $70,000 increase due to the Board's decision to change the exterior walls to stucco (as opposed to fiber-cement), and that as of the date of filing suit, a permit had not yet been issued for the work reflected in Roofing Solutions' contract or the four change orders. Thus, with respect to breach of contract claims, Respondents alleged, among other things, that Relators failed to adequately and properly maintain the common elements with respect to proper waterproofing of the building structure; that Relators recommended to the Association and executed a contract with a contractor that did not have the requisite expertise; that Relators executed four change orders without seeking prior approval from Association members; that Relators failed to advise members of a 31% increase in construction costs; and that Relators refused to correct material misrepresentations in the permit application submitted by Roofing Solutions on behalf of the Association. Respondents also alleged that Relators actions were grossly negligent "and potentially constitute fraud."

4

With respect to claims for breach of fiduciary duty, Respondents alleged many of the same claims made in association with the breach of contract allegations.

In response to the Breach Suit, Relators filed various exceptions including a *lis pendens* exception. In May 2023, the trial court denied all of Relators' exceptions. Relators did not seek review of the ruling denying their exceptions.

Five months later, in October 2023, Relators filed a motion to enroll additional counsel. That same month, Relators' newly-enrolled counsel filed the Motion, *ex parte*, seeking to have Division "F" transfer the Breach Suit to Division "L." Granting the Motion, the trial court judge of Division "F" signed an order transferring this case to Division "L" in October 2023.

Thereafter, before receiving notice of the October 2023 order, Respondents filed an opposition to the Motion and a motion for a contradictory hearing. Respondents argued that Relators were not entitled to have the case reallotted on an *ex parte* basis and that CDC Rule 9.3 did not require reallottment because the two cases were not "related." At the hearing on the matter, the trial court vacated its October 2023 order granting the Motion and transferring the Breach Suit to Division "L" and took the Motion under advisement. Two months later, on February 7, 2024, the trial court issued "Reasons with Judgment," denying the Motion. This writ followed.

## DISCUSSION

A motion to transfer presents a question of law, which this Court reviews *de novo*. *Maqubool v. Sewerage & Water Bd. of New Orleans*, 19-0096, p. 3 (La. App. 4 Cir. 6/12/19), 275 So.3d 337, 339. This Court is not required to give

5

deference to the legal conclusion of the trial court; rather, it must determine whether the trial court's decision was legally correct. *Id.*

Interdivisional transfers are governed by La. C.C.P. art. 253.2.[2] *First Bank & Tr. v. Simmons*, 14-1210, p. 15 (La. App. 4 Cir. 4/22/15), 165 So.3d 1025, 1034. "Under Article 253.2, a case can be transferred to another division in only three circumstances: (i) when the parties consent; (ii) when the transfer is for consolidation for trial, as provided in La. C.C.P. art. 1561; and (iii) when a Supreme Court rule permits the transfer." *Simmons*, 14-1210, p.15, 165 So.3d at 1034.

Interdivisional transfers pursuant to CDC Rule 9.3 are proper under La. C.C.P. art. 253.2; CDC Rule 9.3 is a Supreme Court rule that authorizes such transfers. *Simmons*, 14-1210, p.16, 165 So.3d at 1035. Moreover, "[t]his type of local rule 'provide[s] for automatic consolidation (by re-allotment between divisions) of related cases.'" *Simmons*, 14-1210, p. 23, 165 So.3d at 1039 (quoting 1 Frank L. Maraist and Harry T. Lemmon, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE § 10:8 (1999)).

In denying the Motion, the trial court, in its Reasons with Judgment, cited multiple reasons, including its prior ruling denying the *lis pendens* exception.[3] The

---

[2] La. C.C.P. art. 253.2 provides:

> After a case has been assigned to a particular section or division of the court, it may not be transferred from one section or division to another section or division within the same court, unless agreed to by all parties, or unless it is being transferred to effect a consolidation for purpose of trial pursuant to Article 1561. However, the supreme court, by rule, may establish uniform procedures for reassigning cases under circumstances where an expeditious disposition of cases may be effectuated.

[3] This Court reviews judgments, not reasons for judgment. *Greater New Orleans Expressway Comm'n v. Olivier*, 02-2795, p. 3 (La. 11/18/03), 860 So.2d 22, 24 (observing that "[a]ppeals are taken from the judgment, not the written reasons for judgment" and citing La. C.C.P. art. 1918, which provides that "[w]hen written reasons for the judgment are assigned, they shall be set out in an opinion separate from the judgment"). But, "a court of appeal can use reasons for judgment

6

trial court observed that, in denying the exception, it found a final judgment in the Collection Suit would not bar any judgment rendered in the Breach Suit under the res judicata doctrine. In denying the exception, the trial court further found the two suits were not based on the same transaction or occurrence and were not between the same parties.

The trial court's reliance on its denial of the *lis pendens* exception to deny the Motion was misplaced. The standard for granting a *lis pendens* exception is different from the standard for granting a motion to transfer under CDC Rule 9.3(4). The proper standard the trial court was required to apply under the ALLOTMENT OF CASES portion of CDC Rule 9.3(4) was to determine whether the Collection Suit and the Breach Suit were "related."[4]

Based on our *de novo* review, we conclude that the Collection Suit and the Breach Suit are "related." Both suits involve issues regarding the costs associated with roofing and waterproofing the Paragon Lofts property. Both suits involve assessments levied on the Paragon Lofts' property owners regarding same. The roofing issues with the Paragon Lofts property and related disputes led to the alleged failure to pay the assessments. Both plaintiffs in the Breach Suit (Respondents) aver in their petition that defendants (Relators) have caused them "actual damages in the form of . . . increasing [their] assigned assessment related to the unauthorized change orders." The Collection Suit stems from an attempt to

---

to gain insight into the district court's judgment." *Mathes Brierre Architects v. Karlton/ISG Enterprises, LLC*, 19-0357, p. 13, n.9 (La. App. 4 Cir. 12/3/20), 311 So.3d 532, 541. We do so here.

[4] The trial court also cited the other section of CDC Rule 9.3, entitled TRANSFER AND CONSOLIDATION, which provides that "[t]he transfer and consolidation shall be by order of the judge to whom the case is being transferred, after contradictory hearing with, all parties in each case, or with their written approval." This other section of the rule is inapplicable here.

collect those same challenged assessments from the Respondents. Hence, the two suits are "related" cases for purpose of CDC Rule 9.3(4). Given these circumstances, we determine that the trial court erred in denying the Motion; and we reverse the trial court's judgment.

## <u>DECREE</u>

For the foregoing reasons, we grant Relators' writ; reverse the trial court's February 7, 2024 judgment; and remand with instructions that the trial court transfer this case to Division "L" for further proceedings.

**WRIT GRANTED, JUDGMENT REVERSED; REMANDED WITH INSTRUCTIONS**